UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| KAIRAT OSMONBAEV,<br>Petitioner,<br>v.<br>MARKWAYNE MULLIN, et al.,<br>Respondents. | Case No. 5:26-cv-06720-DTB<br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

**I.**

**PROCEEDINGS**

On November 9, 2026, petitioner Kairat Osmonbaev ("Petitioner"), represented by counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") (Docket No. 1), accompanied by exhibits (Docket No. 1-1).

/ / /

/ / /

/ / /

/ / /

/ / /

The sole claim alleged in the Petition is that Petitioner's detention violates his right to procedural due process under the Fifth Amendment. (Docket No. 1 at 16-19).[1] Petitioner seeks, among other things, his immediate release from custody or, in the alternative, a prompt, individualized bond hearing before an impartial immigration judge "where the government bears the burden of establishing by clear and convincing evidence that Petitioner is a flight risk and/or danger to the community." (Id. at 3, 19-21).

On November 17, 2026 (pursuant to General Order 26-05's expedited briefing schedule, see Docket No. 5), Respondents filed an Answer to the Petition ("Answer") (Docket No. 9), accompanied by three exhibits (Docket Nos. 9-1 through 9-3). In the Answer, Respondents acknowledge that Petitioner appears to be entitled to an initial bond hearing pursuant to Rodriguez Vazquez v. Bostock, 183 F.4th 1160 (9th Cir. 2026) ("Rodriguez Vazquez"). (Docket No. 9 at 3 ["Petitioner appears to be entitled to request and receive an initial bond hearing pursuant to Rodriguez v. Bostock, [183 F.4th 1160] (9th Cir. 2026)[.]"]). In the Answer, Respondents also state that: "While Petitioner also seeks immediate release, to the extent Petitioner would be entitled to any remedy via the Petition, at most it would be ordering a bond hearing to be held before an Immigration Judge under § 1226(a)." (Id.).

On November 17, 2026, Petitioner filed a Reply. (Docket No. 10).

For the reasons set forth below, the Court grants the Petition.

/ / /

/ / /

/ / /

/ / /

---

[1] For the parties' pleadings, the Court cites to the CM/ECF pagination at the top of each page.

## II.

## BACKGROUND[2]

Petitioner is a native and citizen of Kyrgyzstan. (Petition at 6). On July 29, 2022, he lawfully entered the United States most recently on a F1 visa. (Id. at 2, 6; see Docket No. 9-1 at 3). On July 11, 2023, he timely filed an I-589 Application for Asylum and Withholding of Removal with United States Citizenship and Immigration Services. (Petition at 2, 6; see Docket No. 9-1 at 3).

On November 6, 2026, he was arrested by Department of Homeland Security ("DHS")/Immigration and Customs Enforcement ("ICE") at John Wayne Airport in Orange County, California. (Petition at 6; see Docket No. 9-1 at 2). Prior to his arrest, he did not receive written notice of the reason for his detention, ICE did not assess whether he presented a flight risk or danger to the community, and he was not provided a hearing before a neutral decisionmaker to determine if his detention was justified. (Petition at 2, 7). Following his arrest, he was transferred to Adelanto Detention Facility in Adelanto, California, where he remains. (Id. at 2, 6).

On November 7, 2026, DHS issued him a Notice to Appear, charging him as subject to removal pursuant to Immigration and Nationality Act ("INA") § 2371(a)(1)(B) "in that after admission as a nonimmigrant under Section 101(a)(15) of the [INA], [he has] remained in the United States for a time longer than permitted, in violation of this [INA] or any other law in the United States." (Docket No. 9-2).

He has built a life and has a supportive network in the United States, including his sister. (Id. at 2, 6). He does not have any criminal convictions. (Id. at 2, 17; see Docket No. 9-1 at 3).

He is being detained at Adelanto ICE Processing Center in Adelanto, California. (Petition at 2-3, 5; see https://locator.ice.gov/odls/#/results).

---

[2] The Background is based primarily on the allegations in the Petition.

## III.

## LEGAL AUTHORITY

A writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A noncitizen in the custody of immigration authorities may bring a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on the grounds of their detention violates the Constitution or other federal laws. 28 U.S.C. § 2241(c)(3); Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001) (federal courts retain jurisdiction to consider habeas relief under Section 2241 for noncitizens subject to detention following an order of removal).

Here, Petitioner has raised a claim under the Due Process Clause of the Fifth Amendment. (Petition at 16-19). The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. These protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.") (internal quotation marks omitted); Zadvydas, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth

Amendment entitles aliens to due process of law in deportation proceedings.") (internal quotation marks and brackets omitted). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process.") (internal quotation marks omitted). To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)). Under Matthews, courts weigh the following three factors: (1) "[T]he private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

/ / /

/ / /

/ / /

# IV.

# DISCUSSION

## A. Petitioner is Entitled to Habeas Relief.

Petitioner contends that his November 6, 2026 arrest and detention, without any pre-deprivation notice or hearing, violated his right to procedural due process under the Fifth Amendment. (See Petition at 16-19). Petitioner alleges that on July 29, 2022, he lawfully entered the United States on a F-1 Visa, and that on approximately July 11, 2023, he applied for asylum. (Id. at 2, 6). Petitioner alleges that the filing of his Application for Asylum and Withholding of Removal, put DHS/ICE on notice about his intentions of staying in the United States in order to purse fear-based relief. (Id. at 16-17). Petitioner further alleges that for nearly four years, he has been living in the United States pursuing lawful immigration relief, that Respondents elected not to detain him despite exercising authority over him through the asylum process and instead, allowed him to remain at liberty in the United States, and that DHS issued him a United States Employment Authorization card. (Id. at 11, 17).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." Zadvydas, 533 U.S. at 690. The protection afforded by the Due Process Clause runs to citizens and noncitizens alike. J.G.G., 604 U.S. at 673 (quoting Reno v. Flores, 507 U.S. 292, 306 (1993)). Evaluating the contours of Petitioner's due process rights proceeds in two steps: "[T]he first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, Case No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Ky. Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)).

Here, the Court finds that Petitioner has demonstrated a protected liberty interest in remaining at liberty in the community absent sufficient justification for his re-detention, based on the government's decision not to detain him or otherwise impede his liberty while exercising authority over him for purposes of adjudicating his application for immigration relief. Indeed, a number of federal courts in California have found a protectable liberty interest in nearly identical circumstances. See Tzoc v. LaRose, Case No. 26-cv-3965-GPC-VET, 2026 WL 2227161, at *2-3 (S.D. Cal. Aug. 3, 2026); Dai v. Janecha, Case No. 5:26-cv-03966-PD, 2026 WL 2164154, at *1-2 (C.D. Cal. July 24, 2026); E.E.O.H. v. Noem, Case No. 1:26-cv-01266-JLT-SAB-HC, 2026 WL 850363, at *4-5 (E.D. Cal. Mar. 26, 2026), report and recommendation adopted, 2026 WL 967670 (E.D. Cal. Apr. 9, 2026); Villanueva-Montanez v. Lyons, Case No. 2:26-cv-00954-DAD-CKD, 2026 WL 797930, at *1 (E.D. Cal. Mar. 23, 2026); Kalkan v. Chestnut, Case No. 1:26-cv-02028-DAD-EFB, 2026 WL 788112, at *1 (E.D. Cal. Mar. 20, 2026); Kharitonova v. Albarran, Case No. 3:26-cv-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026).

As demonstrated in the cases cited above, courts have found a substantial liberty interest in circumstances where noncitizens commenced immigration proceedings, and the government chose not to detain them. See also Gagik T. v. Chestnut, et al., Case No. 1:26-cv-04337-MWJS, 2026 WL 1837413 (E.D. Cal., June 25, 2026) (granting release to a noncitizen who entered the country on a visitor visa, applied for asylum, was granted employment authorization and remained out of custody for six years); Kharitonova, 2026 WL 531441 at *2 ("Although the Government did not detain and then release her, it made a decision *not* to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual who was initially detained.").

/ / /

The Court finds the reasoning of these cases persuasive. Petitioner entered the United States lawfully, pursuant to a F-1 Visa, and thereafter proceeded through the established lawful process to apply to the government for asylum. (Petition at 2, 6). The government authorized Petitioner to obtain employment. (Id. at 17). Petitioner has since had a fixed address, engaged in lawful employment and established a life in his community, with no violations of the law. (Id. at 2, 6, 17). Thus, Respondents have had full knowledge of Petitioner's identity, immigration status and location during the pendency of his asylum application. With this knowledge, the government has continuously elected not to detain Petitioner while exercising authority over his legal proceedings, all the while permitting him to remain free and at liberty while his application was pending.

Considering the arc of the government's sustained conduct towards Petitioner, the Court finds that Petitioner developed a substantial liberty interest in continued release.

In light of this protected liberty interest, the Court turns to consider what process he is owed before the government may take that liberty interest away. Petitioner claims that due process was required before he was taken into custody. (Petition at 2, 7-19). He thus argues that the appropriate habeas remedy is for him to be released back to the community. (Id. at 3, 13, 20; see Docket No. 10 at 9, 14 19-20). The Court agrees.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

To determine what procedures are constitutionally sufficient to protect a liberty interest, the Court applies the three factors set forth in Mathews:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

As discussed below, the Court finds that each of the three Mathews factors supports Petitioner's constitutional right to process before he was re-detained.

With regard to the first factor, as discussed above, the liberty interest at stake here is significant. Petitioner has a substantial interest in remaining in the community and pursuing his application for immigration relief. See Giovanny Hernan Ortega v. Erik Bonnar, et al, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (holding that the petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community).

Turning to the second Mathews factor, there is a significant risk that the government will erroneously deprive Petitioner of that liberty interest if it does not provide him with pre-deprivation process. The crux of due process "is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews, 424 U.S. at 333 (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)).

/ / /

/ / /

/ / /

And where a petitioner has not received a hearing or other process prior to the revocation of his liberty – as Petitioner alleges – "the risk of an erroneous deprivation [of liberty] is high." Singh v. Andrews, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025) (cleaned up).

Finally, Respondents have not articulated any countervailing government interest—the third Mathews factor—that supports providing this process only after Petitioner has been detained. Due process "usually" requires a hearing before the State deprives a person of liberty or property. Zinermon, 494 U.S. at, 127. Exceptions to that general rule are appropriate where quick action is necessary or where it is impractical to impossible to provide pre-deprivation process. Id. at 128. But neither of those exceptions appears to be applicable to the instant circumstances. Respondents have not argued that Petitioner was an imminent risk of flight or that some other exigency required his immediate arrest and detention at John Wayne Airport on November 6, 2026.

In short, "[i]f the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing [or other procedure] is low." Ortega, 415 F. Supp. 3d at 970; see also Morrissey, et al. v. Brewer, et al., 408 U.S. 471, 483 (1972) (noting that "the State has an overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial[,] . . . [y]et, the State has no interest in revoking parole without some informal procedural guarantees"). Because each of the Mathews factors favors Petitioner's bid for pre-deprivation process, the Court finds that Petitioner's detention—which was accompanied by no process—violates the Due Process Clause.

With respect to the appropriate remedy for such a due process violation, many courts considering this issue have found that a post-detention bond hearing does not rectify the harm of a due process violation because the petitioner "will have already

suffered the harm" that such petitions raise—his potentially erroneous detention. See e.g., Hasratyan v. Bondi, Case No. 5:26-cv-00210-MCS-ADS, 2026 WL 288909, at *4 (C.D. Cal. Feb. 2, 2026) (concluding that where a petitioner received a procedurally deficient post-detention bond hearing, "the post-detention process Petitioner received and will receive is no substitute for the pre-detention process she was owed"); Saballos Rosales v. Noem, Case No. 5:26-cv-00112-JWH-MBK, 2026 WL 761371, at *3 (C.D. Cal. Mar. 16, 2026) (granting TRO and finding that "the post-detention process [of a bond hearing] that Rosales did receive, and will receive, is no substitute for the pre-detention process she was owed.") (citing Hasratyan); Charan S. v. Warden, CA City, Case No. 1:26-cv-3017-TLN-JDP, 2026 WL 1144158, at *6 (E.D. Cal. Apr. 28, 2026) ("The fact that Petitioner was provided with a post-deprivation court-ordered bond hearing does not cure the initial constitutional violation of unlawfully revoking Petitioner's liberty and detaining him without any process for nearly two months"); Domingo v. Kaiser, Case No. 25-cv-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14 2025); see also Riveros-Sanchez v. City of Easton, 861 F. App'x 819, 822 (3d Cir. 2021) ("[I]f a pre-deprivation hearing was required, then no amount of post deprivation process could cure the . . . initial failure to provide a hearing.").

As with similar cases in this Circuit, the Court finds that the appropriate remedy in this case is to order Petitioner placed in the position he would have been absent the due process violation—that is, he should be released from custody on whatever conditions may have been previously imposed. See e.g., E.A.T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) (granting such relief); Jasbin v. Warden, Case No. 26-cv-579-JES-BJW, 2026 WL 353354, at *4 (S.D. Cal. Feb. 9, 2026) (ordering release due to due process violation despite government's argument that the petitioner was only entitled to bond hearing as a Maldonado Bautista class member); Prior v. Chestnut, Case No. 1:25-cv-01131-JLTEPG-HC,

2026 WL 309560, at *9 (E.D. Cal. Feb. 5, 2026) (recommending immediate release as appropriate remedy for due process violation).

## V.

## ORDER

IT THEREFORE IS ORDERED that: (1) Judgment be entered granting the Petition; and (2) that a writ of habeas corpus be issued (a) requiring Respondents to immediately release Petitioner Kairat Osmonbaev (A# 232 743 627) from custody, subject to the same conditions (if any) that he was subject to at the time he was arrested and re-detained, (b) ordering Respondents to return all property confiscated from Petitioner during his arrest and processing into detention; (c) enjoining Respondents and their officers, agents, employees, attorneys and persons acting on their behalf in concert or in participation with them, from re-detaining Petitioner without notice and a pre-detention hearing before a neutral arbiter at which the government bears the burden of proving that Petitioner is a flight risk or danger to the community; and (d) ordering Respondents to file a status report within two (2) business days to confirm that Petitioner has been released from custody pursuant to this Order.

DATED: November 23, 2026

DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE